UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

   Neosha L. Rogers,                                Case No. 22-25190-beh

               Debtor.                         Chapter 13

**DECISION AND CONDITIONAL ORDER ON INTERIM FEE APPLICATION**

      Counsel for the debtor has filed an interim application for fees and costs for work performed through June 5, 2023 in the debtor's main case and on her behalf in an adversary proceeding. Counsel seeks allowance of $10,910.56 in compensation, consisting of $10,160 in fees and $750.56 in costs. The total sought is net of a $3,000 "results based [downward] adjustment" of attorney's fees. *See* ECF No. 108, at 2 & 15. The application states that, of the amount sought, $4,500 in fees has been approved, *see* L.R. 2016.1 and the appendix thereto—of which counsel has received $2,170.18 ($500 from the debtor and $1,670.18 through her Chapter 13 plan)—and $382 in costs has been received, leaving $6,028.56 as an additional administrative expense to be approved for payment through the debtor's plan. ECF No. 108, at 2. No one objected to the fee application.

      After reviewing the applicable Code sections, the relevant caselaw, and the detail of invoices submitted, the Court will grant the fee application in part, allowing a reduced total of $7,958.06 (which includes an additional administrative expense of $3,076.06 to be paid through the plan). This order will become effective two weeks from the date entered, unless the debtor's counsel files a request for a hearing within that time.

## JURISDICTION

      This Court has jurisdiction over the issue before it pursuant to 28 U.S.C. § 1334. Applications for compensation and reimbursement of expenses under 11 U.S.C. § 330 are core proceedings insofar as they concern the

administration of the estate and are proceedings for the allowance of claims against the estate. 28 U.S.C. §§ 157(b)(2)(A), (B).

## FACTUAL BACKGROUND

Debtor Neosha Rogers filed her third Chapter 13 petition in three years on November 25, 2022. ECF No. 1. On December 2, 2022, she filed a motion for turnover of property (vehicle), a motion to intervene and for immediate ruling, and a motion to limit notice. ECF Nos. 24, 25. Creditor TitleMax had repossessed the debtor's car, which she used in her employment as a Lyft driver, several weeks before she filed her bankruptcy petition. On December 5, debtor's counsel filed an unsworn declaration in support of those motions, as well as a proposed order. ECF Nos. 29–31.

Later that same day, the Court entered a docket notice to debtor's counsel explaining that a proceeding to recover property is characterized as an adversary proceeding under Bankruptcy Rule 7001(1), and advising that the Court would take no action on the motion for turnover. ECF No. 32. The next day, counsel filed a letter brief responding to the docket entry and stating his view that an adversary proceeding was not required. ECF No. 34. On December 9, the Court issued an order denying the debtor's motion for turnover, acknowledging that courts have not been uniform in requiring an adversary proceeding when a debtor seeks return of property, but ultimately concluding that an adversary complaint and not a motion is the procedural vehicle most compliant with the Code and Rules in this instance. ECF No. 37. Counsel's time records show the firm conducted legal research on "Adversary Proceeding for violation of the stay" on that same date. ECF No. 108, at 6.

The debtor's counsel then proceeded to draft and file an adversary complaint on December 12, 2022, seeking turnover and damages and relying on 11 U.S.C. § 542. ECF No. 108, at 7; Adversary No. 22-2129, ECF No. 1. TitleMax subsequently moved to dismiss, advising it had released the debtor's vehicle on December 21, 2022, the day following a hearing on the debtor's motion to continue the stay. Adversary No. 22-2129, ECF No. 4. After a hearing

on the motion to dismiss, the Court granted the motion without prejudice to filing an amended complaint if such was warranted. Adversary No. 22-2129, ECF Nos. 8, 10. The Court noted that section 542 does not include a provision for damages.

The debtor's counsel filed an amended complaint on February 28, 2023. Adversary No. 22-2129, ECF No. 14. The amended pleading asserted several violations of 11 U.S.C. § 362 and sought compensatory and punitive damages. The amended pleading reiterated a claim for turnover under section 542 and sought damages and injunctive relief under that claim. *Id.* TitleMax answered the complaint, and after an initial status conference, moved for summary judgment. Adversary No. 22-2129, ECF Nos. 20, 21. The debtor responded to the motion and filed her own cross-motion for summary judgment. Adversary No. 22-2129, ECF Nos. 22, 23. Briefing on the dispositive motions was completed by May 19, 2023. *See* Adversary No. 22-2129, ECF No. 28. Meanwhile, on April 20, 2023, the Court confirmed the debtor's third amended Chapter 13 plan. *See* ECF Nos. 14, 59, 65, 72, 96.

The Court granted summary judgment to TitleMax and denied the debtor's motion. Adversary No. 22-2129, ECF Nos. 30, 31. The Court concluded that the failure to return the debtor's repossessed vehicle for 26 days post-petition did not amount to an act to "exercise control" over property of the estate in violation of 11 U.S.C. § 362(a)(3), noting that the cases upon which the debtor relied for this argument all predated the United States Supreme Court's decision in *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021). Next, the Court held that the creditor's conduct did not violate § 362(a)(4) (prohibiting acts to "enforce a lien against property of the estate"), observing that the debtor had not identified any post-petition enforcement action. Instead, any enforcement by TitleMax took place prepetition. Last, the Court ruled that TitleMax did not violate § 362(a)(6) (prohibiting acts to collect a prepetition claim), as the debtor had offered no evidence of coercive behavior and only speculation as to "motive." *Id.*

## DISCUSSION

The Bankruptcy Code authorizes reasonable compensation for actual, necessary services rendered by an attorney or paraprofessional. 11 U.S.C. § 330(a)(1)(A). The Code requires that the Court satisfy itself, regardless of whether any party has lodged an objection, that compensation sought for work performed on behalf of the estate is reasonable. *In re Harry Viner, Inc.*, 520 B.R. 268, 274 (Bankr. W.D. Wis. 2014); 11 U.S.C. § 330.

In determining the amount of reasonable compensation to be awarded, § 330(a)(3) sets forth a number of non-exclusive factors for the Court to consider, while § 330(a)(4)(A)(ii) prohibits the Court from allowing compensation for services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case"—subject to the exception set forth in § 330(a)(4)(B).

Section 330(a)(4)(B) applies to Chapter 13 cases and provides that "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."11 U.S.C. § 330(a)(4)(B). In other words, "[s]ection 330(a)(4)(B) essentially represents 'an exception to the general rule that professionals' services [] are compensable only to the extent that they benefit the estate.'" . . . '[A] Chapter 13 debtor's counsel is entitled to an administrative expense for compensation for work that is beneficial and necessary to the debtor without proof of benefit or necessity to the Chapter 13 estate or the creditors.'" *In re Williams*, 378 B.R. 811, 822–23 (Bankr. E.D. Mich. 2007) (quoting, *inter alia*, 5 *Collier on Bankruptcy* ¶ 330.04[1][b][v] (15th ed. rev. 2007)).

> Generally, "services that benefit the debtor in connection with the case are services that facilitate the successful completion of the debtor's plan." 5 *Collier on Bankruptcy* ¶ 330.04[1][b][v]. Some other examples of services that might benefit the debtor are services rendered to defend a debtor's claim of exemptions; to defend a motion to lift stay; or to determine the

> nondischargeability of a debt. *Id.* ¶ 330.04[2] (citation omitted). Of course, even those services that benefit only the individual debtor, and not the debtor's estate, are only compensable under § 330(a)(4)(B) to the extent that they are "reasonable" after consideration of the benefit and necessity of those services to the debtor in light of the other factors set forth in § 330(a)(3).

*Williams,* 378 B.R. at 823.

Counsel seeking fees under § 330(a) has the burden to show entitlement to the fees requested. *In re Kenneth Leventhal & Co.,* 19 F.3d 1174, 1177 (7th Cir. 1994). Section 330(a) is "intended to allow lawyers and other professionals retained by the trustee [or the estate] to get compensation comparable to what they would receive in non-bankruptcy cases." *In re Taxman Clothing Co.,* 49 F.3d 310, 313 (7th Cir. 1995).

The procedure for obtaining an award of compensation is set out in Bankruptcy Rule 2016, which requires the entity to file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). This district has adopted Local Rule 2016, which requires applicants seeking compensation to disclose additional information to enable the Court to assess fee requests appropriately. When counsel files an application for fees, the burden of proving that the actual fee is reasonable is on the lawyer requesting the fee. The court conducts a fact-specific inquiry, and the determination of compensability is within its sound discretion. *In re Geraci,* 138 F.3d 314, 318–19 (7th Cir. 1998).

### A. Benefit to the Debtor's Estate or the Debtor

As noted above, the debtor was not successful in her motion for turnover, nor in her subsequent adversary proceeding seeking sanctions for alleged violations of the automatic stay and for turnover. Consequently, the Court must consider whether counsel's services in those proceedings were either "reasonably likely to benefit the debtor's estate," § 330(a)(4)(A)(ii)(I), or beneficial to the debtor, § 330(a)(4)(B). The Court is mindful that the total $10,910.56 in

compensation for which counsel seeks allowance includes, or is net of, a $3,000 reduction, described as a "results based adjustment." ECF No. 108.

A determination of whether services were reasonably likely to benefit a debtor's estate "must be based on the circumstances at the time the services were performed, and not simply in hindsight." *In re Gluth Bros. Const., Inc.,* 459 B.R. 351, 370 (Bankr. N.D. Ill. 2011) (citing *In re Taxman Clothing,* 49 F.3d at 315 (trustee's attorney should not be compensated for pursuing a preference claim "once it became reasonably obvious that further litigation would cost more than it was likely to bring into the estate")). *See In re Jefsaba, Inc.*, 172 B.R. 786, 799 (Bankr. E.D. Pa. 1994) ("[W]e do not conclude that only successful actions may be compensated under § 330. To the contrary, so long as there was a reasonable chance of success which outweighed the cost in pursuing the action, the fees relating thereto are compensable. Moreover, professionals must often perform significant work in making the determination whether a particular course of action could be successful. Such services are also compensable so long as, at the outset, it was not clear that success was remote.").

The same forward-looking approach applies in considering whether services are likely to benefit a Chapter 13 debtor, if not the estate. *See Williams*, 378 B.R. at 825–26 ("The first question that has to be asked and answered by a [Chapter 13] debtor's counsel in rendering post-confirmation services is whether those services are reasonably likely to benefit the debtor if not the estate. If the answer to this question is yes, then the next question becomes whether the burden of the fees being incurred is disproportionate to the benefit to be gained by the debtor. That analysis, balancing costs versus benefits, must be undertaken at the time the services are rendered.").

This authority supports allowance of counsel's fees related to the motion for turnover. Despite the Court's docket alert to counsel that it considered any debtor's request for turnover of property to require an adversary proceeding, the Court's decision ultimately denying that motion acknowledged that

bankruptcy courts are not uniform in their view on the procedural requirements. ECF No. 37.

Counsel's subsequent opposition to the dismissal of the adversary complaint (after TitleMax had returned Ms. Rogers' vehicle) and the filing of the amended complaint and motion for summary judgment bear closer scrutiny. No doubt Ms. Rogers strongly desired the return of her repossessed vehicle for use in her chosen employment. But merely doing a client's bidding is insufficient to justify an award of fees. *See Williams*, 378 B.R. at 827 ("Just because a client wants to embark on a course of action does not mean that the lawyer is obligated to assist the client in pursuing that course of action if it is inconsistent with the exercise of independent professional judgment by the lawyer. Nor does it mean that the fees incurred in pursuing that course of action must be allowed.") (citing *In re Saturley,* 131 B.R. 509, 521 (Bankr. D. Me. 1991) ("[F]utile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed.")); *see also In re Berg*, 268 B.R. 250, 262 (Bankr. D. Mont. 2001).

The Court calculates that from January 23, 2023 to May 30, 2023, counsel recorded $6,012.50 in fees related to defending the (ultimately) dismissed original complaint and the unsuccessful amended complaint. Counsel has voluntarily reduced his fee application by $3,000 (or approximately 50% of what the firm billed for these particular services), likely in recognition of these adverse rulings, leaving a request for $3,012.50 related to the adversary matter. Other courts accept that a percentage downward adjustment is appropriate when a professional's unreasonable efforts brought no benefit to the estate. *See, e.g., In re Nwokedi*, No. 12-32759, 2014 WL 4199106, at *3 (Bankr. S.D. Tex. Aug. 22, 2014). In *Nwokedi*, the professional sought compensation for work done on a plan and disclosure statement regarding which she had never consulted with any estate creditors. *Id.* at *6. The plan was not confirmed. *Id.* Because of the professional's unsuccessful attempts to confirm the plan, as well as her unsuccessful, unreasonable efforts

related to a claim objection, the bankruptcy court adjusted the fees downward by 25%. *Id.* (described in *In re Digerati Techs., Inc.*, 537 B.R. 317, 343–45 (Bankr. S.D. Tex. 2015), *aff'd sub nom. Herrera v. Dishon*, No. 4:-15-CV-227, 2016 WL 7337577 (S.D. Tex. Dec. 16, 2016), *aff'd sub nom. Matter of Digerati Techs., Inc.*, 710 F. App'x 634 (5th Cir. 2018)).

The *Digerati* court had denied confirmation of the Chapter 11 debtor's first plan, but after new counsel came aboard ultimately confirmed the debtor's amended plan and disclosure statement. Finding that the original plan was "not a good gamble," the court determined that approximately 90% of the terms contained in the first plan were included in the amended, confirmed plan. Consequently, the court found that 10% of the content of the earlier proposed plans and disclosure statements were not reasonable or necessary, and thus disallowed 10% of counsel's requested fees. *See also In re Vill. Apothecary, Inc.*, 45 F.4th 940 (6th Cir. 2022) (affirming reduction of fees by 50% where bankruptcy court had applied relevant factors under *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), including "results obtained").

Likewise, in instances where the Court can find no benefit to the debtor or the estate for certain of counsel's services, compensation is not allowed. *See, e.g.*, *In re Select Tree Farms, Inc.*, 568 B.R. 1, 5 (Bankr. W.D. N.Y. 2017) (finding corporate debtor derived no benefit from defense of motion for relief from stay regarding vehicle used by owner's wife and not by corporation).

Here, the Court must determine what percentage of counsel's services in incurring the $6,012.50 described above, if any, were reasonably likely to benefit the debtor or her estate at the time they were performed.

### 1. Debtor's objection to TitleMax's motion to dismiss the original complaint

According to the billing statement attached to the application, $182.50 in fees is attributable to counsel's efforts in objecting to TitleMax's motion to dismiss the original complaint, which was based solely on 11 U.S.C. § 542, and sought turnover of the debtor's vehicle, plus damages. These fees were incurred on January 23 and 24, and February 7, 2023, and *see* ECF No. 108, at 9, by

which time TitleMax already had returned the debtor's car. And, as the Court previously observed, section 542 does not authorize an award of damages.

Counsel's objection to the motion to dismiss, as well as arguments made at the pretrial conference considering the motion, provided no authority or any reasonable argument for continuing to pursue the original complaint or to avoid its dismissal as a matter of law. Nothing in the billing entries demonstrated that any of the work performed was research or other inquiry into "making the determination whether a particular course of action could be successful," *Jefsaba*, 172 B.R. at 799. This work was not reasonably likely to benefit the debtor or her estate when performed, and the related fees of $182.50 will be disallowed.

### 2. Debtor's researching and drafting of the amended complaint

An amount of $2,040 was billed for work performed between February 17 and March 21, 2023 in relation to researching and filing the amended complaint. *See* ECF No. 108, at 9–11. The amended complaint contained four causes of action, under 11 U.S.C. §§ 542, 362(a)(3), 362(a)(4), and 362(a)(6).

Here, it is difficult to see how a majority of this work was reasonably likely to benefit the debtor or her estate. The Court is puzzled as to why the amended complaint restated a claim under section 542 for turnover and damages, when the vehicle already had been returned to the debtor more than two months prior, and the Court already had instructed that section 542 does not include a damages provision. Adversary No. 22-2129, ECF Nos. 8, 10. Of the $2,040 incurred related to filing the amended complaint, $1,290 appears to be for work performed researching section 542 and damages (although some entries are block-billed and also include fees for drafting the amended complaint). Given the Court's prior admonition, it should have been fairly clear at the outset that success on a re-alleged cause of action under section 542 was remote, *Jefsaba*, 172 B.R. at 799, but, mindful of counsel's duty to make an informed determination before pursuing a course of action, the Court will disallow only 75% of these fees, or $967.50.

As for the claims of alleged stay violations under section 362, the billing entries reflect no legal research done before the filing of the amended complaint. Had such research been performed, it would have been clear that, in light of *Fulton* and other applicable law, there was no reasonable basis for the debtor to believe that she could succeed on an action under §§ 362(a)(3) or (a)(4). The only plausible basis for relief, at least before discovery could have demonstrated otherwise, was under section 362(a)(6)—and only if Ms. Rogers later could establish that TitleMax's conduct was intended to coerce her into repaying her prepetition debt. The lack of pre-filing inquiry here is troubling. As it turns out, pursuit of the amended complaint was *not* a "good gamble"—and the decision to proceed without adequate research into the relevant facts and law could be deemed objectively unreasonable for that reason. Accordingly, the Court will disallow 75% of the remaining fees attributable to filing the amended complaint, or $562.50.

### 3. Debtor's summary judgment briefing

From April 18 through May 30, 2023, counsel incurred $3,790 in fees for opposing TitleMax's motion for summary judgment and filing a cross-motion for summary judgment on behalf of the debtor. *See* ECF No. 108, at 12–13. Had counsel located and offered any evidence of coercive post-petition acts to collect on a claim, the Court might have denied summary judgment and proceeded to trial, and counsel's efforts at pursuing at least the debtor's section 362(a)(6) claim could have been deemed reasonable, even if ultimately unsuccessful. But neither the debtor's combined response to the summary judgment motion of TitleMax and her own cross motion, nor her combined response/reply brief, were accompanied by any affidavit or declaration of facts that might have created a genuine issue. *See* Adversary No. 22-2129, ECF Nos. 22, 28. *Compare Digerati*, 537 B.R. at 336–37 (disallowing fees for services associated with a request for post-petition financing, where counsel "did not come close to introducing sufficient evidence for the Debtor to meet its burden of proof on the two issues required to obtain this particular post-petition

financing," and finding that "the attempt to obtain financing was not a 'good gamble' given the poor preparation and paucity of relevant and convincing testimony that the Applicant adduced at the hearing"). As a result, these services were not reasonably likely to benefit the debtor or her estate when performed, and the related $3,790 will be disallowed.

This situation differs from one where debtor's counsel expends efforts to obtain plan confirmation for his client, but ultimately is unsuccessful. Courts have recognized that "if compensation were routinely disallowed when a debtor's reorganization efforts are unsuccessful, it 'would create a chilling effect on the willingness of counsel to undertake the representation of debtors in financial distress and would likely deny access to the court to many deserving debtors.'" *In re Kitts Dev., LLC*, 474 B.R. 712, 725 (Bankr. D.N.M. 2012) (quoting *In re Coastal Nursing Center, Inc.,* 162 B.R. 918, 919 (Bankr. S.D. Ga. 1993)); *see also In re Polanco*, 626 B.R. 12, 23 (Bankr. E.D.N.Y. 2021) (considering whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered "supports the salutary objective that attorneys should not be deterred from undertaking the representation of debtors in bankruptcy cases, including cases that may pose significant challenges and an uncertain outcome, due to a risk of inadequate compensation") (internal quotation marks omitted). Here, counsel did help Ms. Rogers achieve plan confirmation. ECF No. 96. But denying compensation for certain work conducted in relation to the adversary proceeding should not "chill" debtors' counsel generally from representing debtors in consumer bankruptcy cases. Instead it should serve as a reminder that adversary proceedings should be initiated only where there is a reasonable argument under existing law, and where evidence, not speculation, is offered to support those arguments.

B.  **Duplicate Billing**

Section 330(a)(4)(A)(i) prohibits the Court from awarding fees for "unnecessary duplication of services." 11 U.S.C. § 330(a)(4)(A)(i); *see also In re*

*Pettibone*, 74 B.R. 293, 307 (Bankr. N.D. Ill. 1987) ("A debtor's estate should not bear the burden of duplication of services. If found in the record, such duplication shall be disallowed by the court as unnecessary."). Here, the billing record submitted in support of the application for compensation includes two nearly-identical entries for work performed on December 20, 2022—one totaling $450, and the other totaling $517.50. *See* ECF No. 108, at 8. The Court will disallow the first entry ($450), recognizing that this single instance of duplicate billing likely was inadvertent.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court disallows $2,502.50 ($5,502.50, minus the $3,000 voluntary reduction) for work performed and billed by the debtor's counsel that was not reasonably likely to benefit the debtor or her estate at the time the services were performed, and $450.00 for a single duplicate entry on December 20, 2022.

IT IS HEREBY ORDERED that Esser Law Firm's request for interim award of compensation is granted in part. The Court allows Esser Law Firm unpaid fees and costs in the reduced total amount of $7,958.06, under 11 U.S.C. § 330(a)(1). This order will become effective in two weeks from the date of entry, unless counsel files a request for a hearing within that time.

Dated: October 19, 2023

By the Court:

Beth E. Hanan
United States Bankruptcy Judge